**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **AVON EQUITY HOLDINGS, LLC** | : | |
| | : | Case No. 3:12-cv-00012-WDS-DGW |
| and | : | |
| | : | |
| **WILLIAM F. SHEA, LLC,** | : | |
| | : | Judge Stiehl |
| Plaintiffs, | : | |
| | : | Magistrate Judge Wilkerson |
| v. | : | |
| | : | |
| **UNITY ULTRASONIC FIXATION, LLC,** | : | |
| | : | |
| and | : | **COMPLAINT FOR BREACHES OF** |
| | : | **FIDUCIARY DUTY, AIDING AND** |
| **PETER M. BONUTTI,** | : | **ABETTING BREACHES OF** |
| | : | **FIDUCIARY DUTY,** |
| and | : | **PROMISSORY ESTOPPEL,** |
| | : | **UNJUST ENRICHMENT,** |
| **BORIS P. BONUTTI,** | : | **DECLARATORY JUDGMENT,** |
| | : | **AND ACTION FOR ACCOUNTING** |
| and | : | |
| | : | |
| **DEAN A. KREMER** | : | |
| | : | |
| | : | |
| Defendants. | : | |

1. For their Complaint against Unity Ultrasonic Fixation, LLC, Peter M. Bonutti, Boris P. Bonutti, and Dean A. Kremer (collectively "Defendants"), Plaintiffs Avon Equity Holdings, LLC and William F. Shea, LLC (collectively "Plaintiffs") state as follows:

## THE PARTIES

2. Plaintiff Avon Equity Holdings, LLC ("Avon") is a limited liability company organized under the laws of Connecticut with its principal place of business at 48 Ledyard Road,

West Hartford, Connecticut 06117. Avon's sole member, William F. Shea, is a citizen of Connecticut; therefore, Avon is a citizen of Connecticut.

3. Plaintiff William F. Shea, LLC ("Shea LLC") is a limited liability company organized under the laws of Connecticut with its principal place of business at 48 Ledyard Road, West Hartford, Connecticut 06117. Shea LLC's sole member, William F. Shea, is a citizen of Connecticut; therefore, Shea LLC is a citizen of Connecticut.

4. Defendant Unity Ultrasonic Fixation, LLC ("Unity") is a limited liability company organized under the laws of Delaware with its principal place of business at 1303 Evergreen Plaza, Effingham, Illinois 62401. The current members of Unity are all citizens of Illinois; therefore, Unity is a citizen of Illinois.

5. Defendant Peter M. Bonutti is a resident of Effingham, Illinois.

6. Peter Bonutti's principal place of business is located at 1303 Evergreen Plaza, Effingham, Illinois 62401.

7. Peter Bonutti is the majority member and an officer of Unity, and he manages and controls the company.

8. Defendant Boris P. Bonutti is a resident of Effingham, Illinois.

9. Boris Bonutti's principal place of business is located at 1303 Evergreen Plaza, Effingham, Illinois 62401.

10. Boris Bonutti is a member and officer of Unity.

11. Defendant Dean A. Kremer is a resident of Teutopolis, Illinois.

12. Dean Kremer's principal place of business is located at 510 West Fayette St., Effingham, Illinois 62401.

13. Dean Kremer is a member of Unity and was an officer of Unity.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because no plaintiff is a citizen of the same state as any defendant, and, as alleged below, the amount in controversy exceeds $75,000, excluding interest and costs.

15. Venue is proper in this Court under 28 U.S.C. § 1391(a) because Unity regularly conducts business within this district, each of the other defendants either resides, is employed, or conducts business within this district, and a substantial number of the events that give rise to this dispute occurred in this district.

## BACKGROUND ON THE RELATIONSHIP BETWEEN PLAINTIFFS AND BONUTTI

16. Peter Bonutti, through his various companies, is in the business of inventing, developing, patenting, and marketing various medical technologies and devices.

17. Peter Bonutti is the majority owner of a number of companies through which he engages in his business, including Unity, Bonutti Research, Inc. ("BRI"), Joint Active Systems, Inc., MarcTec, LLC ("MarcTec"), Multitak, Inc., and other entities owned or controlled by Peter Bonutti (collectively the "Bonutti Entities").

18. Boris Bonutti, the brother of Peter Bonutti, is the Chief Operating Officer for several of the Bonutti Entities and helps to manage their daily operations.

19. Dean Kremer was the Chief Financial Officer for several of the Bonutti Entities during the time period encompassed by the facts alleged herein.

20. In 2002, Peter Bonutti through one of the Bonutti Entities, BRI, engaged Shea LLC to provide consulting and advisory services to the Bonutti Entities. Shea LLC's services included, without limitation, identifying and proposing potential business transactions for the Bonutti Entities and acting as a liaison with other parties on those transactions.

21. On August 21, 2003, Shea LLC and BRI entered into a Consultant Agreement with an effective date of March 1, 2002.

22. Under the Consultant Agreement, Shea LLC was to provide services on the various projects detailed in the agreement.

23. In exchange, BRI was to provide Shea LLC with various forms of compensation.

24. On one of these projects, involving Unity, Shea LLC was to receive its compensation through a 17.4 percent equity interest in Unity. This interest was held by Avon and is memorialized in the Consultant Agreement.

25. On the other projects, BRI promised to pay Shea LLC fees, including a percentage, generally 22 or 25 percent, of the monies received by the Bonutti Entities from completed transactions.

26. Avon's equity interest in Unity was meant to be in lieu of Shea LLC's normal percentage fee.

27. Between 2002 and 2007, Shea LLC provided services to the Bonutti Entities resulting in a number of completed transactions that generated tens of millions of dollars in revenue for the Bonutti Entities.

28. During this time, Avon remained a member of Unity and the Bonutti Entities continued to pay Shea LLC its fees on the other projects or at least a substantial part of those fees.

29. On October 26, 2007, BRI terminated the Consultant Agreement.

30. BRI's obligation to continue paying Shea LLC's fees and to maintain Avon's interest in Unity survived termination.

31. Therefore, for roughly two years after the Consultant Agreement was terminated, Avon remained a member of Unity, and the Bonutti Entities continued to pay Shea LLC its fees on completed transactions (or at least a substantial portion of those fees).

32. In June of 2009, however, the Bonutti Entities suddenly stopped making payments to Shea LLC. The Bonutti Entities have not made any further payments since that date.

33. Collection of those payments is the subject of a separate lawsuit pending in the U.S. District Court for the Southern District of Ohio.[1]

34. In addition to stopping payment of Shea LLC's fees, on September 15, 2009, Peter Bonutti, on behalf of Unity, notified Avon that Unity was unilaterally redeeming Avon's interest in Unity.

## BACKGROUND ON UNITY AND THE SYNTHES TRANSACTION

35. Unity was originally formed by five original members, in July of 2002. The company was set up in order to facilitate the development and marketing of the ultrasonic fixation technology invented by Peter Bonutti.

36. The original members of Unity consisted of three members associated with the Bonutti Entities—Peter Bonutti, Boris Bonutti, and Dean Kremer (the "Bonutti Members")—and two independent members, Avon and ACOM Investment Co. LLC ("ACOM") (the "Independent Members").

37. The original members' respective interests were: Peter Bonutti 62 percent, Boris Bonutti 11.6 percent, Dean Kremer 2 percent, Avon 17.4 percent, and ACOM 7 percent.

---

[1] *William F. Shea, LLC, et al. v. Bonutti Research Inc.*, Case No. 2:10-cv-615, S.D. Ohio.

38. During the formation of Unity, the original members agreed to some general terms, including the allocation of membership interests and that Peter Bonutti would have $750,000 in preferred equity.

39. Once Unity was formed, the company, with the assistance of Shea LLC, began marketing the Unity technology and looking for companies that might be interested in partnering with Unity or acquiring its technology.

40. Shea LLC helped to facilitate numerous contacts and presentations to numerous companies within the medical industry concerning the Unity technology, including Synthes USA ("Synthes"), Biomet, Smith & Nephew, Zimmer, Stryker, Tornier, ConMed, and others.

41. Ultimately, after discussion with a number of companies, it became apparent that Synthes was a likely prospect for further development or acquisition of the Unity technology.

42. Realizing the potential of a transaction with Synthes on the Unity technology, Shea LLC began working to build a stronger relationship between Synthes and the Bonutti Entities. In order to facilitate this relationship and ultimately encourage a later deal on the Unity technology, Shea LLC proposed a smaller deal between Synthes and MarcTec concerning unrelated technology. That transaction was consummated on May 24, 2006.

43. With the relationship between Synthes and the Bonutti Entities in place, Shea LLC continued to work with Synthes to negotiate a large and financially significant deal on the Unity technology.

44. While Shea LLC continued working to negotiate this deal between Synthes and Unity, Peter Bonutti, on behalf of Unity, made multiple representations to Plaintiffs that they would be compensated for the services provided by Shea LLC through Avon's ownership

6

interest in Unity—rather than receiving a percentage fee, as Shea LLC did on the other projects under the Consultant Agreement.

45. Shea LLC continued to work to negotiate and facilitate a transaction with Synthes, with the understanding that Plaintiffs would be compensated through Avon's ownership interest in Unity.

46. Ultimately, a transaction was consummated with Synthes involving the Unity technology on April 16, 2008.

47. To date, Unity has received in excess of $5 million from Synthes out of the 2008 transaction.

48. This transaction is expected to generate significantly more revenue for Unity—potentially tens or hundreds of millions of dollars—once Synthes takes the Unity product to market.

49. Plaintiffs did not receive a percentage fee or any other compensation on the consummation of the 2008 transaction between Unity and Synthes.

50. Instead, Plaintiffs expected that they would be compensated through Avon's ownership interest in Unity, as Peter Bonutti had promised repeatedly.

51. Ultimately, however, Plaintiffs received no compensation through Avon's ownership interest in Unity or otherwise.

52. Instead, after Shea LLC helped indentify and negotiate the 2008 transaction, which yielded millions of dollars for Unity, Defendants unilaterally stripped Avon of its membership interest and sent Avon a check for mere $6,687.86.

## THE BONUTTI MEMBERS' DELIBERATE SCHEME TO STRIP AVON OF ITS EQUITY INTEREST

53. Between 2002, when Unity was formed, and 2008, when the deal concluded with Synthes, Unity was engaged in further development and marketing of the Unity technology.

54. During this time, the management of Unity's daily operations was handled primarily by Peter Bonutti, Boris Bonutti, and Dean Kremer, all acting as officers of the company.

55. In 2008, Unity received $5 million in initial payments from Synthes, as well as additional payments for reimbursements of development costs.

56. Upon information and belief, Unity continued to receive payments from Synthes from 2009 to 201, including for reimbursements of development costs.

57. By September 2009, nearly all of the more than $5 million received in 2008 had been drained out of Unity.

58. Millions of these dollars were transferred, paid, or distributed to Peter Bonutti or the Bonutti Entities.

59. Upon information and belief, the Bonutti Members drained this money out of Unity through a deliberate scheme to distribute as much as possible to Peter Bonutti and the Bonutti Entities, and virtually nothing to Avon.

60. Upon information and belief, this was done through:

   a. reporting excessive expenses, some of which, upon information and belief, were not legitimate Unity expenses;

   b. a payment of $1 million, plus eight percent interest, to Peter Bonutti, purportedly as payment for his preferred equity;

   c. the repayment of purported loans made to Unity by Peter Bonutti and the Bonutti Entities;

   d. interest paid to Peter Bonutti and the Bonutti Entities for the purported loans; and

   e. potentially other mechanisms of which Plaintiffs are not yet aware.

61. Upon information and belief, Peter Bonutti is the only member of Unity that received any distributions between 2002 and 2009.

62. No distributions were allocated to Avon at any time when it was a member of Unity.

63. In addition to draining the company of all the more than $5 million it received, sometime before January 15, 2008, the Bonutti Members also terminated ACOM's seven percent interest in Unity.

64. Avon was not consulted and did not consent to the decision to terminate ACOM's interest.

65. Upon information and belief, ACOM's seven percent equity interest was distributed solely to Peter Bonutti for a purported payment of one dollar.

66. Upon information and belief, the value of ACOM's seven percent equity interest in Unity was far greater than one dollar.

67. Between 2002 and early 2009, despite Avon's numerous requests, it was not given copies of Unity's records, including financial statements, and was not involved in the daily operations of the company.

68. Avon first received copies of Unity's financial statements in March of 2009.

9

69. On September 15, 2009, after the company had been drained all of the more than $5 million it had received from Synthes, but before Synthes could take the product to market and thereby pay Unity additional sums, Peter Bonutti, acting on behalf of Unity, notified Avon that Unity was unilaterally redeeming Avon's interest.

70. With his September 15, 2009 letter, Peter Bonutti enclosed a check payable to Avon in the amount of $6,687.86, which he claimed was the book value of Avon's interest and the price for redeeming Avon's interest.

71. Upon information and belief, the actual value of Avon's interest in Unity was then, and is now, far greater than $6,687.86—and is at least $1 million.

72. Avon did not cash and has since returned to Peter Bonutti the check that he enclosed with his September 15, 2009 letter.

## THE PURPORTED OPERATING AGREEMENT

73. In his September 15, 2009 letter purporting to redeem Avon's interest in Unity, Peter Bonutti claimed that Unity had "cause" for termination under a document entitled the "First Amended and Restated Unity Operating Agreement" and dated March 1, 2004 (the "2004 Document").

74. Defendants claim that the 2004 Document was a valid, enforceable operating agreement for Unity.

75. In his September 15, 2009 letter, Peter Bonutti alleged that Avon had breached Section 10 of the 2004 Document, which includes, among other things, a purported non-compete provision.

76. Peter Bonutti claimed that Avon's supposed breaches entitled Unity to unilaterally redeem Avon's interest for a percentage of the company's book value (as opposed to fair or market value).

77. Peter Bonutti did not explain in the September 15, 2009 letter what Avon had allegedly done wrong.

78. In fact, Avon did not compete against Unity, breach any confidentiality obligations, or commit any other wrongful act against Unity.

79. More fundamentally, the 2004 Document is not and never was a valid or effective operating agreement for Unity.

80. Avon never signed the 2004 Document.

81. The only members of Unity who ever did sign the 2004 Document were the Bonutti Members (Peter Bonutti, Boris Bonutti, and Dean Kremer).

82. Avon never otherwise consented or agreed to be bound by the 2004 Document.

83. In fact, in early 2003, Avon expressly rejected and refused to sign an earlier draft operating agreement that was materially the same as the 2004 Document.

84. In late 2002, shortly after Unity was formed, Dean Kremer circulated a draft operating agreement to the members, including Avon.

85. Avon specifically rejected the 2002 draft of the operating agreement in written correspondence to Dean Kremer, stating that the draft was "not acceptable."

86. The 2002 draft of the operating agreement was never agreed to by the members.

87. The 2002 draft of the operating agreement was never signed by any of the members.

88. For the next seven years (until Avon's termination), the parties continued doing business as Unity without a written, executed operating agreement in place.

89. Then, in March of 2009, Avon received a packet of documents from Unity which included, for the first time, the 2004 Document, bearing the signatures of the Bonutti Members.

90. This was the first time that Avon had ever received the 2004 Document.

91. The 2004 Document's terms were materially the same as the 2002 draft operating agreement that Avon had expressly rejected and refused to sign.

92. The 2004 Document was signed by the Bonutti Members, but was not signed by the Independent Members.

93. Upon information and belief, the Bonutti Members did not sign the 2004 Document in 2004.

94. Rather, the Bonutti Members signed the 2004 Document years later and then purported to make it effective back to March 1, 2004.

95. Upon information and belief, the Bonutti Members signed the 2004 Document in January 2008 or later.

96. The 2004 Document was not sent to Avon prior to being signed by the Bonutti Members.

97. Upon information and belief, the 2004 Document was not sent to ACOM prior to being signed by the Bonutti Members.

98. The 2004 Document was not agreed to by all of the original members of Unity.

99. Neither the 2002 draft of the operating agreement nor the 2004 Document was ever a valid or effective operating agreement for Unity.

100. Therefore, Defendants had no right to strip Avon of its equity interest in Unity under the 2004 Document – a purported agreement that Avon never signed or agreed to, and whose terms Avon had in fact expressly rejected.

## Count I
## Breach of Fiduciary Duty

101. Plaintiffs incorporate the allegations in paragraphs 1 through 100 as if fully restated herein.

102. Under applicable law, Peter Bonutti owed fiduciary duties to Avon because, among other reasons, he was a majority and controlling member of Unity, an officer of Unity, and he managed the company.

103. Under applicable law, Boris Bonutti owed fiduciary duties to Avon because, among other reasons, he was an officer of Unity.

104. Under applicable law, Dean Kremer owed fiduciary duties to Avon because, among other reasons, he was an officer of Unity.

105. The Bonutti Members breached their fiduciary duties to Avon by, among other unlawful acts:

   a. unilaterally and wrongfully terminating Avon's interest in Unity;
   b. engaging in or facilitating interested transactions;
   c. improperly maintaining the books and records of Unity;
   d. concealing the books and records of Unity from Avon; and
   e. unilaterally and wrongfully terminating ACOM's interest in Unity and improperly distributing ACOM's seven percent interest solely to Peter Bonutti.

106. Upon information and belief, one or more of the Bonutti Members' breaches of fiduciary duty were part of a willful and deliberate attempt to deprive Avon of the value of its membership interest, and to obtain Shea LLC's services on Unity without paying compensation.

107. As a direct and proximate result of the Bonutti Members' breaches of fiduciary duty, Avon has suffered and, without appropriate relief, will continue to suffer damages in excess of $75,000, in an amount to be established at trial.

## Count II
## Aiding and Abetting Breach of Fiduciary Duty

108. Plaintiffs incorporate the allegations in paragraphs 1 through 107 as if fully restated herein.

109. Under applicable law, the Bonutti Members owed fiduciary duties to Avon.

110. As alleged above, the Bonutti Members breached their fiduciary duties to Avon by numerous unlawful acts.

111. Each of the Bonutti Members knowingly participated in, and aided and abetted, the breaches of fiduciary duty by each other Bonutti Member.

112. As a direct and proximate result of the Bonutti Members' breaches of fiduciary duty, Avon has suffered and, without appropriate relief, will continue to suffer damages in excess of $75,000, in an amount to be established at trial.

## Count III
## Promissory Estoppel

113. Plaintiffs incorporate the allegations in paragraphs 1 through 112 as if fully restated herein.

114. Unity and Peter Bonutti promised Shea LLC that it would be compensated for its services through Avon's ownership interest in Unity.

14

115. Shea LLC reasonably relied on Unity's and Peter Bonutti's promises and provided services to Unity with the understanding that Shea LLC would be compensated through Avon's ownership interest.

116. Unity and Peter Bonutti should be bound to the promises made to Shea LLC, that Shea LLC would be compensated through Avon's ownership interest in Unity.

117. Unity and Peter Bonutti knew or should have known that Shea LLC would act in reliance on their promise, and in fact intended to induce Shea LLC's reliance.

118. Shea LLC acted in reasonable reliance by providing valuable services to Unity.

119. By providing its services, Shea LLC suffered detriment.

120. Injustice in an amount in excess of $75,000 will result if Unity and Peter Bonutti's promise to compensate Shea LLC is not enforced.

### Count IV
### Unjust Enrichment

121. Plaintiffs incorporate the allegations in paragraphs 1 through 120 as if fully restated herein.

122. By providing services and assistance to Unity, Shea LLC has enriched and conferred multiple benefits on Defendants.

123. With full knowledge of the benefits received and without justification, Defendants have retained and profited from Shea LLC's services and assistance without making payment to Plaintiffs.

124. As a result, Defendants have been unjustly enriched at Shea LLC's expense in excess of $75,000, in an amount to be established at trial.

125. Plaintiffs have no adequate remedy at law.

15

### Count V
### Declaratory Judgment
Invalidity of Purported Operating Agreement

126. Plaintiffs incorporate the allegations in paragraphs 1 through 125 as if fully restated herein.

127. Defendants improperly terminated Avon's membership interest under the guise of a breach of a purported operating agreement, the 2004 Document.

128. The 2004 Document is not and never was a valid or effective operating agreement for Unity.

129. Thus, there exists a real and actual controversy between the parties concerning the validity and effectiveness of the 2004 Document.

130. Declaratory relief is warranted to resolve this controversy and to eliminate any uncertainty regarding the validity and effectiveness of the 2004 Document.

### Count VI
### Declaratory Judgment
Inspection of Books and Records

131. Plaintiffs incorporate the allegations in paragraphs 1 through 130 as if fully restated herein.

132. Under applicable law, Plaintiffs are entitled to inspect the accounts, books, and records of Unity and the Bonutti Entities.

133. Unity and the Bonutti Entities have refused to allow Plaintiffs to inspect their accounts, books, and records.

134. Thus, there exists a real and actual controversy between the parties concerning their respective rights and obligations.

135. Declaratory relief is warranted to resolve this controversy and to eliminate any uncertainty regarding the parties' rights and obligations.

## Count VII
## Action for Accounting

136. Plaintiffs incorporate the allegations in paragraphs 1 through 135 as if fully restated herein.

137. Avon was an original member of Unity along with ACOM and the Bonutti Members. Avon's membership interest in Unity was improperly and unlawfully terminated in September of 2009.

138. Enclosed with Peter Bonutti's letter indicating that Unity was unilaterally terminating Avon's interest was a check for $6,687.86.

139. Upon information and belief, the value of Avon's interest did then and does now far exceed $6,687.86.

140. Additionally, as detailed above, the Bonutti Members breached their fiduciary duties to Avon by, among other acts, wrongfully terminating Avon's interest, failing to properly maintain the books and records of Unity, and concealing the books and records of Unity from Avon.

141. Plaintiffs must carefully inspect the accounts, books, and records of Unity and the Bonutti Entities, to determine: (1) the extent of the Bonutti Members' breaches of fiduciary duty, (2) whether the Bonutti Members' misrepresented Unity's financials or other relevant facts, and (3) the actual value of Avon's membership interest.

17

142. Upon information and belief, all accounts, books, and records of Unity and the Bonutti Entities are kept by Defendants at the Bonutti Entities' principal place of business.

143. Despite Plaintiffs' requests, Defendants have refused to permit Plaintiffs to inspect the accounts, books, and records.

144. As a result, Plaintiffs have no means by which they can determine the extent of the Bonutti Members' breaches of fiduciary duty, whether the Bonutti Members made misrepresentations, or the actual value of Avon's membership interest.

145. Because Plaintiffs have no adequate remedy at law, Avon is entitled to an accounting of the accounts, books, and records of Unity and the Bonutti Entities.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants and demand the following relief:

a) Reinstatement of Avon's rightful interest in Unity;

b) The rightful value of Avon's interest in Unity;

c) A constructive trust holding Avon's interest in Unity and/or other funds;

d) Compensatory damages in an amount in excess of $75,000, to be established at trial;

e) Punitive damages in an amount in excess of $75,000, to be established at trial;

f) A declaration that the 2004 Document is not and never was an effective or valid operating agreement for Unity;

g) A declaration that Plaintiffs are entitled to an inspection of the accounts, books, and records of Unity and the Bonutti Entities;

h) An Order requiring Unity to permit Plaintiffs to inspect the accounts, books, and records of Unity and the Bonutti Entities;

i) An accounting of the accounts, books, and records of Unity and the Bonutti Entities;

j) Plaintiffs' attorneys' fees and costs of this action; and

k) All other appropriate relief.

Respectfully submitted,

/s/ Nicole M. Loucks
Nicole M. Loucks (ARDC #6277925)
Dinsmore & Shohl, LLP
191 W. Nationwide Blvd., Suite 300
Columbus, OH 43215
Phone: 614-629-5711
Fax: 614-628-6890
Email: nicole.loucks@dinsmore.com

*Attorney for Plaintiffs*
*Avon Equity Holdings, LLC and*
*William F. Shea, LLC*