# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AVON EQUITY HOLDINGS, LLC, <br> WILLIAM F. SHEA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITY ULTRASONIC FIXATION, LLC, <br> PETER M BONUTTI, BORIS P BONUTTI, <br> DEAN A KREMER, <br> Defendants. | CASE NO.   12-CV-12-WDS |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendants' Unity Ultrasonic Fixation, LLC ("Unity"), Peter M. Bonutti, Boris P. Bonutti, and Dean A. Kremer's (collectively "defendants") motion to dismiss this action for improper venue (Doc. 4.), to which plaintiffs Avon Equity Holdings, LLC, ("Avon"), and William F. Shea, LLC, ("Shea, LLC"), collectively ("plaintiffs") have filed a response (Doc. 14). Also before the Court is the parties' joint motion for a limited stay (Doc. 31), in which the parties seek a stay of this lawsuit until the completion of trial in a related action pending in the United States District Court for the Southern District of Ohio. The Court will address each motion, in turn, below.

### BACKGROUND

Plaintiffs filed this action seeking, among other things, their alleged rightful compensation for services provided to the defendants. Plaintiffs and defendants agreed that in return for William Shea's services to defendants, plaintiff Avon received a 17.4% ownership interest in Unity. Plaintiffs claim that this arrangement was based upon a mutual agreement of all parties, as reflected in a document entitled "General Terms of Understanding 10/25/02," and a Consultant Agreement executed on August 21, 2003, and made effective as of March 1, 2002. Defendants

claim, however, that a Unity Operating Agreement, which the Court will refer to as the "2004 Document" governs their agreement. Plaintiffs assert they never agreed to any version of a Unity Operating Agreement which was proposed by defendants. It is the 2004 Document under which defendants claim to have rightfully redeemed Avon's interest in Unity, and the same document which contains the forum selection clause at issue now. Plaintiffs assert that the 2004 Document was never a valid agreement between the parties.

Plaintiffs' complaint consists of seven separate counts, including, in general terms: (I) breach of fiduciary duties; (II) aiding and abetting breach of fiduciary duties; (III) promissory estoppel, requesting the Court to enforce Unity and Peter Bonutti's alleged promise to compensate Shea, LLC for its services through Avon's ownership interest in Unity; (IV) unjust enrichment, claiming that defendants have been unjustly enriched at Shea, LLC's expense; (V) a request for declaratory relief to eliminate any uncertainty regarding the validity and effectiveness of the 2004 Document; (VI) a request for declaratory relief to resolve the controversy between the parties concerning plaintiffs' rights to inspect the accounts, books, and records of Unity and the Bonutti Entities;[1] and (VII) a request for an accounting of the accounts, books, and records of Unity and the Bonutti Entities.

Plaintiffs request judgment against defendants and demand the following relief: (a) reinstatement of Avon's rightful interest in Unity; (b) the rightful value of Avon's interest in Unity; (c) a constructive trust holding Avon's interest in Unity and/or other funds; (d) compensatory damages in an amount in excess of $75,000, to be established at trial; (e) punitive damages in an amount in excess of $75,000, to be established at trial; (f) a declaration that the 2004 Document is not and never was an effective or valid operating agreement for Unity; (g) a declaration that plaintiffs are entitled to an inspection of the accounts, books, and records of Unity

---

[1] As referenced by plaintiffs in their complaint, the "Bonutti Entities" consist of Unity, Bonutti Research, Inc., Joint Active Systems, Inc., MarcTec, LLC, Multitak, Inc., and other entities owned or controlled by Peter Bonutti.

and the Bonutti Entities; (h) an Order requiring Unity to permit plaintiffs to inspect the accounts, books, and records of Unity and the Bonutti Entities; (i) an accounting of the accounts, books, and records of Unity and the Bonutti Entities; (j) plaintiffs' attorneys' fees and costs of this action; and (k) all other appropriate relief.

In their motion to dismiss for improper venue, defendants argue that plaintiffs' claims are subject to the forum selection clause contained in the 2004 Document, requiring their claims to be brought in Chicago, Illinois. Plaintiffs counter that their claims are not subject to this clause because it, and the 2004 Document containing it were neither agreed upon, nor signed by all of the members of Unity, and the document was never a valid or effective operating agreement of Unity. Further, plaintiffs claim they are not seeking any relief pursuant to the terms of the 2004 Document.

## LEGAL STANDARD

Before proceeding to the merits of the motion, the Court must consider a number of threshold issues. To begin with, the Seventh Circuit has determined that "[a] lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). Accordingly, defendants' venue challenge was appropriately filed as a 12(b)(3) motion, as opposed to a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction.

The second threshold issue is which party bears the burden of proof regarding the 12(b)(3) motion. Defendants claim that the burden rests on the plaintiffs, and the plaintiffs assert the opposite. Generally, the plaintiff bears the burden of establishing proper venue.[2] *Grantham v.*

---

[2]The Western District of Wisconsin noted differing views regarding which party should bear the burden of proof:
> Because venue is considered a personal privilege of the defendant and not a question of the court's power to exercise jurisdiction over the case or over the defendant, the district courts are split in their decisions allocating the burden of proof. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and Procedure* § 3826 (2d ed. 1986 & Supp.2003) (listing cases). Even the two leading authorities on federal practice disagree. *See* 17 *Moore's Federal Practice* § 110.01[5][c] (3d ed.1999) ("correct" view is that

*Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). Notably,

> the Seventh Circuit has not said what is necessary to meet this burden but it has established a well-defined standard for motions challenging personal jurisdiction: "the allegations in [the plaintiff's] complaint are to be taken as true unless controverted by the defendant['s] affidavits, and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." *Turnock v. Cope*, 816 F.3d 332, 333 (7th Cir. 1987) (noting standard for personal jurisdiction). At least one other circuit has applied this personal jurisdiction standard when evaluating a plaintiff's evidence on motions to dismiss for lack of venue under Fed. R. Civ. P. 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Several district courts within the Seventh Circuit have adopted this standard.

*Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, No. 03-C-0190-C, 2003 WL 23220142, at *2 (W.D. Wis. Aug. 20, 2003). As one district court reasoned, the personal jurisdiction standard is applicable to venue challenges "because venue and personal jurisdiction are similar insofar as a defendant may waive the plaintiff's failure to meet either requirement." *Id.* (citing *Reed v. Brae Railcar Management, Inc.*, 727 F.Supp. 376, 377 (N.D. Ill. 1989)).

Under the particular circumstances of this case, however, the burden of proof inquiry is more complex. Defendants claim that the 2004 Document, which contains a forum selection clause requiring claims to be brought in Chicago, Illinois, was a binding agreement between the parties, notwithstanding the lack of William Shea's signature, because his signature was not required to create an LLC operating agreement under Delaware law. Plaintiffs claim that they never agreed to the terms of the 2004 Document, and it did not create a binding agreement between them. In this respect, the essential inquiry is whether the 2004 Document was a contract between the parties, and ultimately, the venue determination turns on this issue.

In a factually similar case, in which the defendants claimed that plaintiff's suit was subject to a forum selection clause included in a contract that was unsigned, and under which the plaintiff

---

defendants have burden of showing that venue is improper), and 15 Wright, Miller & Cooper, *Federal Practice* § 3826 (2d ed.1986) ("'better view', and the clear weight of authority" is that plaintiff should bear same burden in proving venue as it does in proving jurisdiction) (citing *Pfeiffer v. International Academy of Biomagnetic Medicine*, 521 F.Supp. 1331, 1336 (E.D.Mo.1981)).

*Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, No. 03-C-0190-C, 2003 WL 23220141, at *2 (W.D. Wis. Nov. 24, 2003), *affirmed after trial*, 407 F.3d 876, 880-81 (7th Cir. 2005).

was not seeking relief, the Western District of Wisconsin determined that the defendant bore the burden to show that it had entered into a contract with the plaintiff. *Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, No. 03-C-0190-C, 2003 WL 23220141, at *2 (W.D. Wis. Nov. 24, 2003), *affirmed after trial*, 407 F.3d 876, 880-81 (7th Cir. 2005). In that case, as in the one before this Court, the critical question was not the validity of the venue clause, but the existence of a contract. *Id*. Additionally, in that case, as in this one, the laws of both states which were potentially applicable provided that "a party seeking to rely on a contract must prove the existence of the contract." *Id.*; *see, e.g.*, *Reese v. Forsythe Mergers Group, Inc.*, 682 N.E.2d 208, 213 (Ill. App. Ct. 1997) (party seeking to enforce a contract must prove its existence.); *Montgomery v. Achenbach*, C.A. No. 04C-11-048 WLW, 2007 WL 1784080, at *2 (Del. Super. May 17, 2007) (a party seeking to enforce a contract carries the burden of proving the existence of the contract by a preponderance of the evidence.).

The Seventh Circuit agreed with the *Latino Food Marketers* Court that the burden was appropriately placed on the defendant with respect to this issue. *Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, 407 F.3d 876, 880-81 (7th Cir. 2005). Accordingly, this Court concludes that the defendants bear the burden of proof for the purposes of this motion.

The Court also notes, however, that the existence of a contract is a question of fact, and under these circumstances, is an issue intertwined with the merits of the case. *See Lexington Insurance Co. v. DSC Logistics*, No. 09-cv-7003, 2010 WL 1910310, at *3 (N.D. Ill. May 6, 2010). In their complaint, plaintiffs seek a declaration from the Court regarding the status of the 2004 Document. Furthermore, the defendants' actions in redeeming plaintiffs' interests in Avon, the crux of the lawsuit, were, according to defendants, performed in accordance with the terms of the 2004 Document. In other words, whether the 2004 Document is binding on the parties is a pivotal determination.

At this point in the proceeding, the relevant facts are in dispute, and it is unclear who the ultimate trier of fact will be. Plaintiff has not requested trial by jury, and "[e]ven should

Defendant not wish to exercise its right to a jury trial, the parties must present the facts to the Court after discovery, not in this jurisdictional phase of the litigation." *Lexington*, 2010 WL 1910310, at *3. Accordingly, the Court will conditionally decide this issue, at this time, for the limited purpose of determining whether venue is proper, a determination which, in the interests of judicial economy, should not be delayed.[3] *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F.Supp.2d 834, 846-47 (N.D. Ill. 2006) (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 831 (7th Cir. 1995)).

Amidst these unique circumstances, the Court must decide which "standard to apply to the determination of the disputed issues of fact." *Latino Food Marketers*, 2003 WL 23220141, at *2. As in *Latino Food Marketers*, "the question of venue is intertwined with the merits of the case. In such a circumstance, applying a preponderance of the evidence standard to a preliminary determination runs the risk of overstepping the jury's role in deciding issues of fact." *Id.* The *Latino Food Marketers* Court explained:

> [T]here is a real danger that the findings that must be made to determine venue will have a preclusive effect that will deprive the parties of their right to have a jury decide the facts of their dispute. To avoid this danger, I will frame the findings as conditional or tentative and will consider the *likelihood* that defendant will be able to prevail on its contention that venue is not proper in this court.

*Id.* at *3. This Court intends to follow the same course of action, will make *conditional* findings, and will consider the *likelihood* that defendants will be able to prevail on their contention that venue is not proper in this Court.

The Court still resolves factual disputes in favor of the plaintiffs in accordance with the standard for ruling on motions to dismiss for improper venue. *See Educational Visions, Inc. v. Time Trend, Inc.*, No. 1:02-cv-1146-DFH, 2003 WL 1921811, at *3 (S.D. Ind. April 17, 2003) ("[I]n ruling on [defendant's] motion to dismiss [for improper venue], the court accepts plaintiff's allegations as true unless controverted by defendant's factual submissions, and the court resolves

---

[3] "When jurisdiction or venue depends on contested facts-even facts closely linked to the merits of the claim-the district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). Neither plaintiffs nor defendants request an evidentiary hearing, and the Court **FINDS** that the materials submitted by the parties are sufficient to make a venue determination without holding a hearing.

any factual conflicts in the parties' submissions in the plaintiff's favor."); *AGA Shareholders*, 467 F.Supp.2d at 842 ("When ruling on a motion to dismiss under 12(b)(3), . . . , the court assumes the truth of the plaintiff's allegations unless they are contradicted by the defendant's affidavits.").

Furthermore, "[w]hen ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (quoting *Cont'l Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). Accordingly, in making its conditional findings and conclusions, the Court will consider the submissions of the parties, including the defendants' motion (Doc. 4), the plaintiffs' response (Doc. 14), and the additional documents attached as exhibits to each of these submissions, which all together consist of over 200 pages of materials.

The final threshold issue is the choice of applicable law. "[C]ontract formation is governed by state law." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Here, the specific question is the likelihood that defendants can show venue is not proper, in other words, that the 2004 Document constituted a valid agreement between the parties. Defendants assert that Delaware law applies because Unity is a Delaware corporation and the 2004 Document is Unity's operating agreement. The defendants, however, have not identified any conflict between Delaware and Illinois law. Plaintiffs assert that Illinois law "may" be applicable, but that the relevant law of both Delaware and Illinois is not conflicting. Ultimately, the choice of law is a non-issue because in either Illinois or Delaware, the existence of a contract is dependent on a determination that the parties had a "meeting of the minds." Specifically, Illinois law provides:

> The principles of Illinois contract law to be applied to this case are well settled. A valid contract requires an offer, acceptance, and consideration. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill.App.3d 813, 296 Ill.Dec. 206, 835 N.E.2d 61, 69 (Ill.App.Ct.2005) (citing cases). **Additionally, there must be mutual assent by the parties—i.e., a meeting of the minds to the essential terms and conditions of the contractual relationship.** *IMI Norgren, Inc. v. D & D Tooling Mfg., Inc.*, 306 F.Supp.2d 796, 801–02 (N.D.Ill.2004) (citing *Pritchett v. Asbestos Claims Mgmt. Corp.*, 332 Ill.App.3d 890, 266 Ill.Dec. 207, 773 N.E.2d 1277, 1282

7

(Ill.App.Ct.2002)); *Reese v. Forsyth Mergers Group, Inc.*, 288 Ill.App.3d 972, 224 Ill.Dec. 647, 682 N.E.2d 208, 213 (Ill.App.Ct.1997) ( Reese ). To be enforceable, a contract's terms must be reasonably certain or able to be determined. *See DiLorenzo v. Valve & Primer Corp.*, 347 Ill.App.3d 194, 283 Ill.Dec. 68, 807 N.E.2d 673, 678 (Ill.App.Ct.2004) (citations omitted). In other words, the court must be able to ascertain what it is the parties have agreed to do; if the essential terms are so uncertain that the court cannot make this determination, there is no contract. *Id*.

*Lexington Insurance Co. v. DSC Logistics*, No. 09-cv-7003, 2010 WL 1910310, at *3 (N.D. Ill. May 6, 2010) (emphasis added). In Illinois, "[f]undamental to the concept of an agreement is an expression of mutual assent between the two (or more) parties to that agreement." *Matter of Turner*, 156 F.3d 713, 718 (7th Cir. 1998).

According to well-settled Delaware law, "[t]hree elements are necessary to prove the existence of an enforceable contract: 1) the intent of the parties to be bound by it, 2) sufficiently definite terms and 3) consideration." *Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006). In other words:

> a contract is an agreement upon a sufficient consideration to do or not to do a particular thing. **The elements necessary to create a contract include mutual assent to the terms of the agreement, also known as the meeting of the minds.** Mutual assent requires an offer and an acceptance wherein all the essential terms of the proposal must have been reasonably certain and definite. **Thus, if any portion of the proposed terms is not settled there is not agreement. Where there is no meeting of the minds, there is no enforceable contract in Delaware.**

*Howlett v. Zawora*, C.A. No. CPU6-11-001128, 2012 WL 1205103, at *2 (Del. Com. Pl. March 30, 2012) (internal quotation marks and citations omitted) (emphasis added).

The parties have not identified a conflict between the relevant law that might apply to their dispute. Where the parties do not identify a conflict between two bodies of state law that might apply to their dispute, the law of the forum state is applied.[4] *Gould v. Artisoft, Inc.*, 1 F.3d 544,

---

[4] In determining whether a contract exists, a federal court applies substantive state law governing the formation of contracts. *See Liu v. T & H Machine, Inc.,* 191 F.3d 790, 795 (7th Cir.1999). When the district court's subject matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332 (2000), the district court applies the substantive law of the forum state. *Davis v. G.N. Mortgage Corp*., 396 F.3d 869, 876 (7th Cir.2005). This includes applying the forum state's choice-of-law rules if the substantive law of more than one jurisdiction is in issue. *Jupiter Aluminum Corp. v. Home Ins. Co.,* 225 F.3d 868, 873 (7th Cir.2000); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 581 (7th

549 n.7 (7th Cir. 1993); *Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007). Notably, Illinois is currently the forum state, and would remain the forum state even if the venue clause were found applicable. The Court also notes that "[w]here parties dispute the existence or validity of a contract, the Court is not bound by any choice of law clause contained in the contract in determining the threshold question of the contract's validity." *East Lynn Fertilizers, Inc. v. CHS Inc.*, No. 09-2085, 2010 WL 5070752, at *4 (C.D. Ill. Dec. 3, 2010) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004)). The Court will, therefore, apply Illinois law to the determination of whether a contract exists.

## ANALYSIS

I. Motion To Dismiss for Improper Venue

    A. 2004 Document-Forum Selection Clause

        i. CONDITIONAL FINDINGS OF FACT

Plaintiff, William Shea is an individual who has served, through his own companies, as a business consultant and advisor, who, among other things, helps inventors to market and license medical technologies. William Shea is the sole member of plaintiff Shea, LLC, and plaintiff Avon. Shea, LLC and Avon are both citizens of Connecticut, the state under which these limited liability companies are organized, where their principal places of business are located, and where their sole member, William F. Shea, is a citizen.

Defendant, Dr. Peter Bonutti is an orthopedic surgeon and inventor who has created new technology in a variety of fields. He is the founder and majority owner of Bonutti Research, Inc. ("BRI"), a company through which many of his inventions are developed. He (or various family trust vehicles) is the majority owner of other companies, including defendant Unity, and Marctec, LLC. Defendant Boris Bonutti, Peter Bonutti's brother, is the Chief Operating Officer for several

---

    Cir.1994). The district court is to apply the substantive law of the state whose law governs the dispute as it believes the courts of that state would. *See Davis*, 396 F.3d at 876.

*AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F.Supp.2d 834, 843-44 (N.D. Ill. 2006).

of the Bonutti Entities. Defendant Dean Kremer is the Chief Financial Officer for several of the Bonutti Entities.

Defendant Unity is a limited liability company organized under the laws of Delaware, with its principal place of business in Effingham, Illinois, and with its current members all citizens of Illinois, making it an Illinois citizen. Peter Bonutti is a resident of Effingham, Illinois, with his principal place of business in Effingham, Illinois. He is the majority member and officer of Unity, and manages and controls the company. Boris Bonutti is a resident of Effingham, Illinois, with his principal place of business in Effingham, Illinois. He is a member and officer of Unity. Dean Kremer is a resident of Teutopolis, Illinois, with his principal place of business in Effingham, Illinois. He is a member and was an officer of Unity.

In 2002, Peter Bonutti, through BRI, hired William Shea, through Shea, LLC, to act as a consultant and advisor. Shea, LLC's services included, among other things, finding and developing opportunities to license Peter Bonutti's technology and patents to manufacturers of orthopedic and spine devices. On August 21, 2003, Shea, LLC and BRI executed a Consultant Agreement, which was made effective as of March 1, 2002. The parties do not dispute the validity or contents of this agreement, which was signed by William Shea, as President of Shea, LLC, and by Peter Bonutti as President and CEO of BRI, as CEO of Joint Active Systems, Inc., as President and CEO of Unity, and on behalf of the Bonutti 2003 Trust. This agreement contained a particular arrangement with respect to Unity: that in return for Shea, LLC's services, Avon received a 17.4% membership interest in Unity. In June, 2002, a Unity representative filed a certificate of formation with the Delaware Secretary of State. (Doc. 14-2).

In December, 2002, Dean Kremer emailed to William Shea a "draft" of a Unity "operating agreement" dated "as of" June 25, 2002, that contained the same forum selection clause that appears in the later 2004 Document at issue. The clause provides:

> Any action brought in connection with this Agreement shall be brought only in the federal or state courts with jurisdiction over Chicago, Illinois. The Members irrevocably submit to the personal jurisdiction of such courts, and waive any objections they may have concerning the venue or convenience of such forums.

>   EACH MEMBER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL
>   BY JURY.

(Doc. 4.3 at 26). In his email dated December 23, 2002, Dean Kremer stated that a draft operating agreement for Unity was attached, that Dean Kremer himself had not reviewed it in full, but only scanned it briefly, that he should be alerted to any questions or concerns regarding the document, and that he would like to finalize the document by the middle of January. (Doc. 14-4). Defendants do not dispute the validity of this email.

Defendants assert that William Shea only alleged that he "complained" about the agreement, but does not allege that he or Avon ever objected to the forum selection clause. Plaintiffs however, present an email dated January 26, 2003, written roughly one month after Dean Kremer's email, in which William Shea wrote:

>   I read the Unity Operating Agreement for the first time this weekend. I'm sure
>   we can work through this document but it is not acceptable as it stands. Frankly,
>   it won't work for any of us (including Peter) in one part or another. I'm not sure
>   whether to change this one or start with a simpler less complicated document. Is
>   this Fred's standard document?

(Doc. 14-5). Dean Kremer replied to this email on January 27, 2003, and wrote: "Yes…I believe it was." (Doc. 14-5). The Court resolves this factual dispute in plaintiff's favor: William Shea clearly objected to the forum selection clause by stating that the document was not acceptable. Defendants have presented no evidence that William Shea agreed to this version of the document, or that he ever signed it.

According to defendants, on February 16, 2004, an amended agreement bearing the date March 1, 2004, was circulated to the members of Unity, including William Shea, as the sole owner of Avon, and a revised version of this agreement was circulated on February 24, 2004. This version contained the same forum selection clause as the original version, and it is this version of the agreement that defendants claim became a binding agreement, and which the Court refers to as the "2004 Document." An email from William Shea dated February 24, 2004, verifies defendants' claim that William Shea received a document, but does not establish that the parties

11

reached an agreement. In the February 24, 2004 email, William Shea wrote, "I took a fast look at section 10 and do not believe it represents the deal with Nardella or for that matter even myself." (Doc. 4-6).

According to plaintiffs, the terms of the 2004 Document were nearly identical to the 2002 document, with the exception that new parties, the Nardellas, were added, as well as a section 10.6 relating to inventions. Plaintiffs contend that no agreement was ever reached with respect to this version of the document and no further draft was ever sent to William Shea for discussion. Defendants present no evidence that William Shea agreed to this version of the document, or that he ever signed it.

William Shea, in his written declaration, stated that he never received another version to consider after February, 2004. According to defendants, however, in January, 2008, Avon received a Unity corporate resolution which stated that "[t]he Operating Agreement as of March 1, 2004 is in full force and effect except as [sic] the ownership of Interests is amended by the Schedule 1 attached hereto." (Doc. 4-7). This document was signed by Peter Bonutti, Boris Bonutti, and Dean Kremer. William Shea, in his declaration, states that he did not receive the corporate resolution until 2009, and that he did not agree to the terms at any time.

In March, 2009, after Unity began generating revenue, Avon was sent another copy of the Unity agreement, which was signed by Peter Bonutti, Boris Bonutti, and Dean Kremer, but not signed by Avon or ACOM. (Doc. 4-8). William Shea asserts that he never signed, or otherwise agreed to, this partially executed version of the document either, which was first seen by him in 2009, and that it is not clear when the document was signed by the other parties. This version of the document was only different from the 2004 rejected version in that the Nardellas' interests were now deleted. Defendants assert that following the circulation of this document, neither Avon nor Shea objected to any provision of the agreement. William Shea asserts however, that this document was, in substance, the same document that he had previously clearly rejected twice. According to defendants, on September 15, 2009, Unity redeemed Avon's interest in accordance

12

with the terms of "Unity's LLC agreement." According to William Shea, in September 2009, Peter Bonutti wrote him a letter (Doc. 14-7) purporting to terminate Avon's membership interest in Unity due to alleged violation of section 10 of the 2004 Document, which contains the non-compete provisions which Shea had specifically rejected. (Doc. 14-1 at 8).

William Shea, as president of both Avon and Shea, LLC, presented this Court with a signed declaration that he never agreed or assented to the 2004 document, or any draft of it, or any of the terms that were unilaterally inserted by the defendants, such as the forum selection clause and the non-compete clause. (Doc. 14-1 at 1). William Shea further declares that he is the only representative of Avon or Shea, LLC that was authorized to sign or assent to these types of documents, but in any case, no one else signed on Avon or Shea, LLC's behalf. (Doc. 14-1 at 1). He also declares that Unity was formed in 2002, and that the document entitled "General Terms of Understanding, 10/25/02" (Doc. 14-3), sent to William Shea by Peter Bonutti or his representatives in October, 2002, and the Consultant Agreement (Doc. 4-2) reflected Avon's 17.4% interest in Unity. (Doc. 14-1 at 3). William Shea declares that he rejected the 2002 draft operating agreement, as evidenced by his email, that he rejected a similar 2004 draft, and that he never approved any written operating agreement thereafter. (Doc. 14-1). William Shea further declares that he never agreed to the terms of the 2004 Document, but "simply worked for Unity's benefit for several years, understanding that Avon would receive the compensation that had been promised (the 17.4% membership interest)." (Doc. 14-1 at 7).

William Shea declares that after Unity's formation, he assisted with marketing Unity's technology, facilitated numerous contacts and presentations concerning the Unity technology, and worked to build a relationship with Synthes USA ("Synthes"). After it became apparent that Synthes was a likely prospect for a deal involving the Unity technology, William Shea worked to build a stronger relationship with Synthes, consummating a small deal between Synthes and MarcTec in 2006, and then working on a larger deal between Unity and Synthes, which came to fruition in April 2008. According to William Shea, he received written affirmance that he would

be compensated for his work in accordance with his stock percentage (approximately 17%). (Doc. 14-1 at 7). William Shea declares that since 2008, Unity has received over $5 million from Synthes, and that significantly more revenue is expected, potentially tens or hundreds of millions of dollars, once Synthes takes the product to market. (Doc. 14-1 at 7). According to plaintiffs, they have received no compensation for this deal, and instead, Avon's membership in Unity was unilaterally terminated in 2009. (Doc. 14-1 at 7).

Defendants have not provided an affidavit to support their assertions that plaintiffs agreed to or assented to the 2004 Document or its terms. Plaintiffs, however, have submitted a declaration by William Shea that plaintiffs never accepted the terms of the 2004 Document. Defendants have failed to file affidavits to dispute the sworn declaration of William Shea.

### ii. CONDITIONAL CONCLUSIONS OF LAW

On balance of the evidence before the Court, defendants have failed to show a likelihood that they can prevail on their contention that venue is not proper in this Court. It is not likely that defendants will be able to show that the 2004 Document represented a valid agreement between the parties. The Court will address defendants' specific arguments below.

Defendants cite *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006), to support their proposition that unless the plaintiffs argue that the forum selection clause itself was procured by fraud, the action must be dismissed for improper forum. The *Muzumdar* case provides that "under either federal or Illinois law, forum selection clauses are valid and enforceable." *Id*. A key factual distinction between the *Muzumdar* case, and this one, however, is that the Seventh Circuit had before it an agreement, signed by the appellants, but which the appellants argued was void and unenforceable as against public policy, which, in turn, made the forum selection clause void. *Id*. at 762. The Court reasoned that this argument would lead to the absurdity that the federal courts in Illinois would first determine whether the contracts were void

14

before deciding whether they could even consider the case at all in light of the forum selection clauses, and then, if the court determined that the contracts were not void, the case should be sent to another forum to determine whether the contracts were void. *Id*. Here, a different issue is before the Court: whether a contract exists where there is no evidence that the plaintiffs ever assented to the terms or signed the agreement. Accordingly, *Muzumdar's* holding is not controlling here.

Defendants have failed to produce an agreement which was signed by the plaintiffs, but this fact, alone, is not dispositive. Further, plaintiffs have presented hard evidence that the draft documents received by William Shea were expressly rejected. Defendants argue that William Shea received a copy of the "agreement", and "[e]ach time, the agreement contained the same forum selection clause, and not once did Shea or Shea LLC or Avon object to that provision." (Doc. 4-1 at 7). While there is no evidence that William Shea objected specifically to the forum selection clause, there is evidence that he objected to the entire draft of the "agreement." William Shea explicitly states "[the December 2002 draft] is not acceptable as it stands." (Doc. 14-5). In February of 2004, William Shea again explicitly states "I took a fast look at section 10 [of the February 2004 draft] and do not believe it represents the deal." (Doc. 4-6). Defendants argue that even though William Shea objected to the drafted agreement as a whole, any section that he did not object to specifically must remain valid. This would mean that instead of just saying "no" to defendants' proposed document, William Shea would be required to specifically and explicitly enumerate and object to or agree with each clause in the entire document. By any logic, provisions from a rejected draft do not become binding simply because they were not mentioned when the entire draft was rejected.

Defendants argue that plaintiffs' claims arise under the 2004 Document because the 2004 Document contains the agreed-upon allocation of interests. Thus, defendants argue, all of the other sections of the 2004 Document are valid. In essence, they argue that plaintiffs do not have any

interest in Unity outside of the 2004 Document, i.e. the 2004 Document "confers Avon's interest in the company." In other words, defendants attempt to argue that plaintiffs are claiming benefits under the document, indicating intent to be bound on one hand, and then disclaiming the forum selection clause on the other hand based on the fact that the document was not signed. The facts on the record show, however, that this is simply not the case. Avon had a 17.4% interest in Unity in 2002, when Unity was first created, and when the 2004 Document did not exist. Contrary to defendants' arguments, plaintiffs are not asserting rights under the 2004 document. Plaintiffs' claims are based on previous agreements between the parties, and plaintiffs specifically negate that William Shea ever agreed to the terms of the 2004 Document. Plaintiffs have presented emails authored by William Shea that specifically and directly show that an agreement had not been reached with respect to the 2004 Document. Accordingly, defendants have not shown that plaintiffs are bound because they accepted the benefits of the contract.

Defendants argue that Avon is bound by the 2004 Document regardless of whether it signed the agreement. They refer to the Delaware Statute which provides that a member of a limited liability company is bound by the liability company agreement whether or not the member executed the agreement. 6 Del. C. § 18-101(7). The question is whether the 2004 Document is representative of the Unity LLC Agreement. The statute provides that a "'Limited Liability company agreement' means any agreement . . . written, oral or implied, of the member or members as to the affairs of a limited liability company and the conduct of its business." *Id.* Plaintiffs argue that the 2004 Document was not an "agreement . . . of the . . . members." Without having shown the requisite meeting of the minds, defendants have not shown that an agreement was reached with respect to the terms of the 2004 Document, regardless of the lack of William Shea's signature on the document. Defendants simply have not shown that the parties ever reached an agreement, and accordingly, the Delaware statute cited does not negate this requirement or cure the deficiency.

Defendants argue that "[s]ignificantly, Shea LLC and Avon affirmed the validity of the

16

agreement in the Consultant Agreement." (Doc. 4 at 9). By the terms of this document, the parties agreed that Shea, LLC would be compensated "in accordance with the terms of Unity's LLC Agreement." (Doc. 4 at 9). The Consultant Agreement was signed in August, 2003. Thus, the agreement referenced in the Consultant Agreement cannot be the 2004 Document. In addition, Avon expressly rejected a draft of the operating agreement in both 2002 and 2003. This does not show that plaintiffs agreed to any terms in the 2004 Document, or that the requisite meeting of the minds ever occurred.

In sum, William Shea contends that he never received the partially executed version of the 2004 Document until 2009, he expressly rejected similarly drafted documents from 2002 and 2004, and he has declared that no agreement was ever reached adopting the 2004 Document as the Unity operating agreement. Without presenting any affidavits to rebut William Shea's declaration, defendants have not shown, at this stage, that any such agreement was ever reached between all the members, and defendants have failed to meet their burden.

Upon review of the evidence as it stands at this stage in the proceedings, it is unlikely that defendants will be able to prove to a jury that the 2004 Document was or is a valid contract between the parties. The more persuasive evidence is that plaintiffs never agreed to the terms proposed by the defendants, and that plaintiffs continued to work with defendants in accordance with their previous agreements. Accordingly, the Court **FINDS** that the forum selection clause is not applicable.

### B. Venue Determination, Absent Applicable Forum Selection Clause

In the absence of an applicable forum selection clause, the Court returns to the standard analysis under a 12(b)(3) motion, placing the burden on plaintiffs to show that venue is proper. Absent an applicable forum selection clause, venue is governed by 28 U.S.C. § 1391(b), which provides, inter alia, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . ; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Pursuant to this statute, for all venue purposes,

> (1) a natural person, . . . , shall be deemed to reside in the judicial district in which that person is domiciled; (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

28 U.S.C. § 1391(c).

Plaintiffs have shown that venue is proper in the Southern District of Illinois because Unity is admittedly located in this district and conducts regular business within this district, and defendants Peter Bonutti, Boris Bonutti, and Dean Kremer either reside in or are employed within this district. Also, substantial events giving rise to this dispute occurred here. 28. U.S.C. § 1391(b)(2). None of these assertions were disputed by the defendants. Additionally, defendants did not object to this Court's personal jurisdiction over them, and have, therefore, waived this defense. Fed. R. Civ. P. 12(h). Accordingly, the plaintiffs have made a prima facie showing that venue is proper in the Southern District of Illinois.

## II. Joint Motion for a Limited Stay

The parties request a 4-6 month postponement of the existing deadlines related to discovery and other pertinent matters, as well as the trial date. Their request is based on the fact that this action was severed from *William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-cv-00615-GLF-NMK (S.D. Ohio), a case which is currently set for trial on June 24, 2013, in the Southern District of Ohio. The parties assert that there is overlap with and relation between the parties of both cases, and that counsel for the parties are the same in both cases. The parties ask for a stay in the above-captioned matter due to the fact that they are actively engaged in the

proceedings in Ohio, and extending the deadlines in this case would alleviate hardships on the parties and their counsel.

Upon review of the record, the Court **GRANTS** the parties' joint motion for a limited stay (Doc. 31). The parties are hereby **DIRECTED** to immediately notify the Court of the conclusion of the trial proceedings in the Southern District of Ohio, at which time the Court will set new deadlines for the defendants to answer, as well as new discovery and dispositive motion deadlines. The Court **CONTINUES GENERALLY** the trial date in this matter, and will set a new date upon notification from the parties that the trial in the Southern District of Ohio has concluded.

## CONCLUSION

Defendants' Motion to Dismiss for improper venue (Doc. 4) is **DENIED**. The parties' joint motion for a limited stay (Doc. 31) is **GRANTED**, and this case is hereby **STAYED**.

**IT IS SO ORDERED.**

**DATE: March 26, 2013**

/s/   WILLIAM D. STIEHL
        DISTRICT JUDGE